IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-508-BR

| | |
|---|---|
| CUMBERLAND COUNTY HOSPITAL SYSTEM, INC., d/b/a CAPE FEAR VALLEY HEALTH SYSTEM,<br><br>    Plaintiff,<br><br>    v.<br><br>SYLVIA M. BURWELL, in her official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | ORDER |

Before the court is a motion to dismiss filed by defendant Sylvia M. Burwell, in her official capacity as Secretary of Health and Human Services ("defendant"). (DE # 11.) Plaintiff Cumberland County Hospital System, Inc., d/b/a Cape Fear Valley Health System ("plaintiff") filed a response, (DE # 12), to which defendant replied, (DE # 20). Plaintiff additionally filed a surreply. (DE # 23.) Fund for Access to Inpatient Rehabilitation filed an *amicus curiae* brief in support of plaintiff's opposition to defendant's motion. (DE # 24.) This matter is ripe for disposition.

## I. BACKGROUND

Plaintiff seeks a declaratory judgment and a writ of mandamus compelling defendant to resolve plaintiff's administrative appeals before the Office of Medicare Hearings and Appeals ("OMHA") within 90 days of the filing of such appeals. (Compl., DE # 1, ¶¶ 64-74.) OMHA, an office of the United States Department of Health and Human Services ("HHS"), administers Medicare appeals hearings. (Id. ¶ 7.) In recent years, the number of Medicare appeals has

skyrocketed, and OMHA is presently overwhelmed with an ever-growing backlog of appeals. (Id. ¶¶ 29-34.) Plaintiff, a healthcare provider in Cumberland County, North Carolina, has hundreds of appeals currently stagnating in the backlog. (Id. ¶¶ 11-12.)

### A. The Medicare Appeals Process

To obtain reimbursement for rendering service to a Medicare beneficiary, healthcare providers must submit a claim to a Medicare Administrative Contractor ("MAC"). (Compl., DE #1, ¶ 20.) See also 42 U.S.C. § 1395ff(a). Claims that are initially paid by MACs may be subsequently audited by third-party government contractors who determine whether the payment was justified. (Compl., DE # 1, ¶ 21.) One such contractor is known as a Recovery Audit Contractor ("RAC"). (Id.)

The Medicare statute establishes a four-tier process for appealing unfavorable Medicare claim determinations. If a claim is initially denied by a MAC or initially paid but later overturned by a RAC's post-payment review, the healthcare provider's first avenue for appeal is to resubmit the claim to the MAC for redetermination. 42 U.S.C. § 1395ff(a)(3)(A). If unsuccessful at this first level of review, a provider can appeal the MAC's decision to a Qualified Independent Contractor ("QIC"), id. § 1395ff(c)(1), who must issue a decision within sixty days from the time the appeal is filed, id. § 1395ff(c)(3)(C)(i). The first two stages of the appeals process are overseen by the Centers for Medicare and Medicaid Services ("CMS"). (Compl., DE # 1, ¶ 18.)

If unsatisfied with the QIC's determination, a provider may proceed to the third level of the appeals process and request a hearing before an Administrative Law Judge ("ALJ"). 42 U.S.C. § 1395ff(d)(1)(A). The statute directs the ALJ to render a decision within 90 days from the time the appellant requests a hearing. Id. As noted above, OMHA oversees this third level

2

of review. (Compl., DE # 1, ¶ 18.) Lastly, a provider may appeal the ALJ's decision to the Department Appeals Board ("DAB")[1] which must either render a decision or remand the appeal to the ALJ for further proceedings within 90 days. 42 U.S.C. § 1395ff(d)(2)(A). Unlike the ALJ, the DAB is not required to conduct a hearing. 42 C.F.R. § 405.1108(a).

For the second through fourth levels of appeal, the Medicare statute allows a party to "escalate" an appeal to the next level of review if the relevant decision-maker fails to issue a decision within the applicable timeframe. If a QIC does not render a decision within 60 days from the date a request for reconsideration was filed, a party can escalate the appeal to an ALJ. 42 U.S.C. § 1395ff(c)(3)(C)(ii). Likewise, a party may bypass the ALJ and escalate the appeal to the DAB if the ALJ does not act within 90 days. Id. § 1395ff(d)(3)(A). Finally, if the DAB fails to review the ALJ's determination within 90 days, a party may seek judicial review. Id. § 1395ff(d)(3)(B). On an appeal escalated past the ALJ stage, the DAB has 180 days to render a decision before a party can seek judicial review. 42 C.F.R. § 405.1100(d).

## B. The Current Backlog

Plaintiff focuses its complaint on the delays at the third level — the "ALJ stage" — of the appeals process. Undoubtedly, OMHA faces a staggering backload of appeals. Plaintiff states that "[i]n just two years (2012 and 2013), the backlog of ALJ-level appeals *quintupled*, from 92,000 to 460,000 pending claims." (Compl., DE # 1, ¶ 29 (emphasis in original).) Defendant concedes that "[t]he magnitude of the increase to OMHA's workload far exceeds the ALJs' ability to keep up with the surge of incoming appeals." (DE # 11-1, at 7.) For example, in fiscal

---

[1] Federal regulations refer to the decision-maker at the fourth level of review as the Medicare Appeals Council, or "MAC." To avoid confusion between the decision-makers at the first and fourth level of review, and consistent with the parties' briefs, the court will use "MAC" to refer to the first level of review and "DAB" to refer to the fourth level of review.

3

Case 5:14-cv-00508-BR   Document 25   Filed 03/18/15   Page 3 of 17

year 2013, ALJs decided only 79,372 out of 384,151 filed appeals. (DE # 12-2, at 9.) In fiscal year 2014, the average processing time for an appeal at the ALJ stage was 414.8 days. Id. at 16.

In December 2013, Nancy Griswold ("Griswold"), OMHA's Chief ALJ, informed Medicare appellants that the "average wait time for a hearing before an [ALJ] has risen to 16 months and is expected to continue to increase . . . ." (Griswold Mem., DE # 11-4, at 1.) She further stated that OMHA would temporarily suspend assignment of most new requests for hearings and "[did] not expect general assignments to resume for at least 24 months . . . ." (Id.) Plaintiff contends that the situation has further deteriorated, and as of February 2014, 480,000 appeals were pending assignment to an ALJ. (Compl., DE # 1, ¶ 33.) Plaintiff states that the DAB is also experiencing backlogs which make timely decisions at that stage of appeal unlikely. (Id. ¶¶ 35-37.)

Plaintiff lays the blame for the extraordinary backlog at the feet of "overzealous" RAC auditors who "in recent years have become increasingly aggressive." (Id. ¶¶ 3, 8.) The government compensates RACs based on the value of improper Medicare payments they recover. (Id. ¶ 22.) Plaintiff argues that this perversely incentivizes RACs to overturn initial MAC payment decisions. (Id.) It cites data showing that appealed RAC denials are overturned by ALJ's at a rate of 72%. (Id. ¶ 24.) Plaintiff states that RACs are particularly motivated to overturn initial MAC decisions "for more expensive services, such as inpatient rehabilitative care," which result in greater compensation. (Id. ¶ 22.)

Plaintiff suggests that RACs have singled out its inpatient rehabilitation facility ("IRF") for especially aggressive auditing. (Id. ¶¶ 51-53.) RACs have audited 1,169 claims from plaintiff's IRF and have reversed payment in 940 of them. (Id. ¶ 53.) After unsuccessfully appealing the RACs' reversals at the first two levels of review, plaintiff returned $12.3 million to

4

CMS. (Id. ¶¶ 57-62.) Plaintiff now complains that those funds — which "approximate[] one year's revenue for the [IRF]" — are stuck in an appeals process that offers no meaningful prospect for recoupment. (Id. ¶¶ 13, 62.) It alleges that defendant has violated a statutory duty to provide it a hearing in front of an ALJ within 90 days of filing its appeals. (Id. ¶ 13.) Plaintiff urges this court to intervene and compel defendant to process its appeals in accordance with the timeline Congress established. (Id. ¶¶ 64-70.)

## II. LEGAL STANDARD

Defendant moves to dismiss plaintiff's mandamus claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. (DE # 11-1, at 2-3.) In response to a 12(b)(1) motion, the plaintiff bears the burden of showing that federal jurisdiction is appropriate. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). A district court should allow a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. When ruling on a 12(b)(1) motion, the "court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings . . . ." Id. (internal quotation omitted).

Defendant also moves, pursuant to Rule 12(b)(6), to dismiss plaintiff's declaratory judgment claim. (DE # 11-1, at 3.) This rule permits a court to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A 12(b)(6) motion should only be granted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

5

## A. Merging of mandamus jurisdiction and merits inquiries

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To establish jurisdiction, plaintiff must show "the co-existence of three elements: (1) . . . a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested . . . ; and (3) no other adequate remedy is available." Estate of Michael ex rel. Michael v. Lullo, 173 F.3d 503, 512-13 (4th Cir. 1999) (internal quotation omitted).

In suits under the Mandamus Act, the jurisdictional facts are intertwined with the merits inquiry.

> In resolving a motion to dismiss an action for relief in the nature of mandamus, courts have characterized the issue as involving both a jurisdictional and a merits inquiry because, in determining whether the court has jurisdiction to compel an agency or official to act, the court must consider the merits question of whether a legal duty is owed to the plaintiff under the relevant statute.

Auburn Reg'l Med. Ctr. v. Sebelius, 686 F. Supp. 2d 55, 62 (D.D.C. 2010), rev'd on other grounds and remanded, 642 F.3d 1145 (D.C. Cir. 2011). To establish jurisdiction, a plaintiff is not required to prove the merits of its mandamus action. See In re First Fed. Sav. & Loan Ass'n of Durham, 860 F.2d 135, 140 (4th Cir. 1988) ("It is, of course, not necessary for a plaintiff in a section 1361 mandamus action to prove the merits of his case in order to establish jurisdiction."). Rather, "[i]f the complaint states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action, jurisdiction is established and a trial court must determine a remedy *vel non* on the merits." Id.

Plaintiff has alleged that under 42 U.S.C. § 1395ff(d)(1)(A) it has a right to an ALJ hearing and decision within 90 days after filing a request for a hearing. (Compl., DE # 1, ¶¶ 66-

6

70.) It further alleges that HHS has a duty to provide such hearing. (Id. ¶ 66.) Additionally, plaintiff contends that escalation is not an adequate remedy because it deprives plaintiff of its right to a hearing. (Id. ¶ 70.) The court does not find these allegations to be frivolous. Accordingly, the court possesses jurisdiction and will treat defendant's motion as an attack on the merits of plaintiff's mandamus action and employ the Rule 12(b)(6) standard. See Kerns v. United States, 585 F.3d 187, 195 (4th Cir. 2009) (when an "issue is determinative of both jurisdiction and the underlying merits of [a] claim, dismissal under Rule 12(b)(1) is inappropriate unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous."); Montez v. Dep't of Navy, 392 F.3d 147, 150 (5th Cir. 2004) ("In circumstances where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." (internal quotation omitted)); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) ("However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case"); Lloyd v. Agents for the I.R.S., No. 1:99CV00027, 1999 WL 691881, at *1 n.1 (M.D.N.C. July 29, 1999) (converting a 12(b)(1) motion to a 12(b)(6) motion in a mandamus action).[2]

---

[2] Plaintiff briefly suggests that discovery should be undertaken and an evidentiary hearing held before the court addresses the merits of its claim. (DE # 12, at 3.) Plaintiff states that it "seeks discovery and a hearing to test the Secretary's assertions regarding the limitations of her resources and the manner in which they have been employed with respect to ALJ adjudications of Medicare appeals." (DE # 23, at 3.) The court finds that such discovery is unnecessary. As detailed below, the limitations on defendant's resources are publicly available. Also noted below, the court will not question how defendant has employed its limited resources. Thus, discovery on this issue would render no additional information relevant to the court's task at hand.

7

Defendant supports its motion with materials outside the pleadings.[3] Specifically, defendant relies on Griswold's declaration, (DE # 11-2), and statement before the United States House Committee on Oversight and Government Reform ("House Committee"), (DE # 11-3). "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Whether to accept the submission of material beyond the pleadings . . . is within the discretion of the court." Brown v. Inst. for Family Centered Servs., Inc., 394 F. Supp. 2d 724, 729 n.2 (M.D.N.C. 2005). Here, the court declines to convert the motion to dismiss into a summary judgment motion and excludes from its consideration Griswold's declaration and the content of her statement before the House Committee.[4]

## III. DISCUSSION

### A. Mandamus action

Mandamus is a drastic, "wildcard remedy" which courts reserve only for extraordinary situations. United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 511 (4th Cir. 1999) (internal quotation omitted). It is proper only where: "(1) the [plaintiff] has shown a clear right to the relief sought; (2) the [defendant] has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available. . . . In other words, the [plaintiff] must show a 'clear and indisputable' right to the issuance of the writ." In re First Fed. Sav. & Loan Ass'n of Durham, 860 F.2d at 138 (internal citations omitted).

---

[3] The court notes that defendant's motion was filed as a Rule 12(b)(1) motion, in consideration of which the court may consider materials outside the pleadings. However, because the court finds it proper to convert the motion into a Rule 12(b)(6) motion, it must determine whether it may consider the extraneous materials.

[4] Defendant also attached to its motion a memorandum from Griswold to Medicare Appellants. (DE # 11-4.) Because plaintiff explicitly relies on this memorandum in its complaint and does not challenge its authenticity, (Compl., DE # 1, ¶ 29), the court will not exclude it from consideration. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (allowing a court to consider extrinsic evidence attached to a defendant's 12(b)(6) motion where plaintiff relied on the evidence in its complaint and does not contest its authenticity).

8

### 1. Clear right to relief and clear duty to act

The Medicare Act states, "[A]n [ALJ] shall conduct and conclude a hearing . . . and render a decision on such hearing by not later than the end of the 90-day period beginning on the date a request for hearing has been timely filed." 42 U.S.C. § 1935ff(d)(1)(A). If an ALJ fails to act within the 90-day timeframe, the statute allows a claimant to escalate its claim to the DAB. Id. § 1935ff(d)(3)(A). Because the statute "contemplates instances where appeals will not be resolved within 90 days and specifies the available remedy[,]" defendant argues that Congress did not establish a mandatory deadline and, thus, plaintiff has no clear right to an ALJ hearing within the 90-day timeframe. (DE # 11-1, at 14.) Defendant contends the statute's construction permits the court to read the word "shall" as merely directory rather than mandatory. (Id. at 15.)

In response, plaintiff cites the "bedrock principle of statutory construction" that the word "shall" is mandatory. (DE # 12, at 9.) It argues that Congress established a clear and unambiguous right to a hearing within the 90-day timeframe. (Id.) Plaintiff points to other sections of the Medicare Act which employ the word "may" to indicate permissive action, arguing that when "may" and "shall" are used in the same statute, the court should infer that Congress intended to give each its normal meaning. (Id.)

Whether the statute employs "shall" in a mandatory or directory manner depends "on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer a discretionary power or to impose an imperative duty." United Hosp. Ctr., Inc. v. Richardson, 757 F.2d 1445, 1453 (4th Cir. 1985) (internal quotation omitted) (alterations omitted). Formalistic rules of grammar will not trump legislative intent. Id. Further, "stated [statutory] consequences of noncompliance may compel a directory construction — for example,

9

where a statute prescribes a remedial course that may be followed if the primary direction was not obeyed." NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 57:8 (7th ed. 2008).

In the instant case, there is no dispute that defendant has failed to comply with the statutory timeframe. What is less evident is whether plaintiff has adequately plead that it has a "clear and indisputable" right to an ALJ hearing within that timeframe and whether defendant has a clear duty to provide such hearing. The court recognizes that "[m]andamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." In re First Fed. Sav. & Loan Ass'n of Durham, 860 F.2d at 138.

The statute directs defendant to hear and decide appeals at the ALJ stage within the 90-day timeframe, but, in the same sub-section, specifically sets out escalation as an alternate course in the case of a delay. Congress, therefore, expressly anticipated delays in Medicare adjudications and prescribed escalation as the remedy. Under these circumstances, the court cannot find that Congress clearly intended to grant plaintiff an absolute right to an ALJ hearing, nor that defendant has a clear duty to provide such a hearing within the 90-day timeframe.

2. **Discretionary considerations**

Even assuming that plaintiff can adequately plead the three mandamus elements, whether the writ should issue is committed to the discretion of this court. See Kerr v. U. S. Dist. Court for N. Dist. of Cal., 426 U.S. 394, 403 (1976) ("[I]t is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed."); Nat'l Shooting Sports Found., Inc. v. Jones, 840 F. Supp. 2d 310, 323 (D.C. Cir. 2012) ("Even when the legal requirements for mandamus jurisdiction have been satisfied, a court may grant

relief only . . . when the court finds compelling . . . equitable grounds." (internal quotation omitted)); In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 593 (4th Cir. 2006) ("Mandamus is an extraordinary remedy whose issuance depends upon the discretion of the court considering the petition."); United States ex rel. Rahman, 198 F.3d at 511 ("While the writ is recognized at law, it is administered with equitable principles in the interest of justice and at the discretion of the issuing court."). Judicial intervention does not necessarily follow a violation of a statutory timeframe. See In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991).

In its discretion, the court finds that the particular circumstances of this case do not warrant judicial intervention in the form of mandamus. The court's discretion is guided by relevant considerations set forth in Barr Labs and Am. Hosp. Ass'n, et al. v. Burwell, No. 14-851(JEB), 2014 WL 7205335 (D.D.C. Dec. 18, 2014) ("AHA").[5]

In Barr Labs, plaintiff sought a writ of mandamus to compel the Food and Drug Administration ("FDA") to act on several of its drug applications which had been pending far beyond the FDA's statutory deadline. 930 F.2d at 73, 74. In declining to "exercise [its] equitable powers to enforce the deadline," the court noted that "respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." Id. at 74. It continued:

> Assuming constant resources for the generic drug program, a judicial order putting Barr at the head of the queue simply moves all others back one space and produces no net gain. Agency officials not working on Barr's matters presumably have not just been "twiddl[ing] their thumbs". See *Board of Trade v. SEC,* 883

---

[5] In these cases the courts determined whether mandamus should issue based on a six-factor test set out in Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). Although the court declines to strictly apply this test at this juncture, it finds that much of the courts' reasoning provides constructive guidance for this court's exercise of discretion, notwithstanding plaintiff's argument to the contrary. Plaintiff argues that Barr Labs does not apply to cases where, as here, a plaintiff has been singled out for mistreatment. (DE # 12, at 25.) It suggests that its IRF has been unfairly targeted by overly-aggressive RACs. (Compl., DE # 1, ¶¶ 51-54.) However, plaintiff challenges the delay in OMHA's adjudication of Medicare appeals, *not* the RAC's audits. Plaintiff has not alleged that defendant has singled it out for unfair treatment by failing to timely process its appeals. Therefore, plaintiff's attempt to distinguish this case from Barr Labs is unavailing.

11

F.2d 525, 531 (7th Cir. 1989). Perhaps Congress should earmark more funds specifically to the generic drug program, . . . but that is a problem for the political branches to work out.
. . . .
In short, we have no basis for reordering agency priorities. The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way. Such budget flexibility as Congress has allowed the agency is not for us to hijack.

Id. at 75, 76.

In AHA, plaintiffs sought the same relief that plaintiff seeks in the instant case: a writ of mandamus compelling the Secretary of HHS "to process their administrative [Medicare] appeals in accordance with statutory timelines." 2014 WL 7205335, at *1. Citing the HHS Appropriations Act, the court found that the agency was "constrained by budgetary concerns and competing agency priorities." Id. at *8. The court "decline[d] [plaintiffs'] invitation" to force the Secretary to hire more ALJs, "reprogram" agency funds, or seek greater appropriations in order to ameliorate the delays. Id. at *8-9. In doing so, the court stated:

> [M]andamus jurisdiction is not a license to intermeddle, and the Court is loath to horn in on the problem-solving efforts of the other two branches of government. Congress funds OMHA, Congress created the RAC program, and Congress is aware of the inundation of appeals—indeed, it has recently held hearings on the subject. . . . HHS and Congress are actively discussing what might be done about the glut of appeals. So what might the Court do? It makes little sense to force the Secretary to ask Congress for funding to solve a problem of which Congress is well aware. At best, that would be an empty gesture, at worst judicial overstepping.
> . . . .
> In the end, here is the state of affairs: OMHA has been saddled with a workload it cannot, at present, possibly manage. Congress is well aware of the problem, and Congress and the Secretary are the proper agents to solve it. In such situations—where an agency is underfunded and where it is processing Plaintiffs' appeals on a first-come, first-served basis – the Court will not intervene.

Id. at *9.

The Barr Labs and AHA courts' concerns with judicial intervention are equally applicable in the case at hand. As plaintiff notes, defendant is currently "completely

12

understaffed and inadequately resourced." (DE # 12, at 5.) In a December 2013 memorandum to OMHA Medicare appellants, Chief ALJ Griswold noted that as OMHA's workload increased, its resources "remained relatively constant, and more recently were reduced due to budgetary sequestration." (Griswold Mem., DE # 11-4, at 1.) The court takes judicial notice of OMHA's recent funding history:

| Fiscal Year | Amount |
|---|---|
| FY 2010 | $71,147,000 |
| FY 2011 | $71,005,000 |
| FY 2012 | $72,011,000 |
| FY 2013 | $69,444,054 |
| FY 2014 | $82,381,000 |

Dep't of Health and Human Servs. Fiscal Year 2015 Justification of Estimates for Appropriations Committees, at 182, *available at* http://www.hhs.gov/budget/fy2015/fy-2015-hhs-congressional-budget-justification.pdf. OMHA's funding levels bear no proportion to the agency's increased workload. As plaintiff states, "The workload of OMHA's sixty-five ALJs increased by almost 300% from fiscal year 2012 to fiscal year 2013," with the forecast for 2014 suggesting no respite. (Compl., DE # 1, ¶¶ 30, 33 (stating that "OMHA received more than 15,000 appeals per week in February of 2014.").) OMHA lacks adequate resources to process the overwhelming increase in appeals. (See DE # 12, at 5 (plaintiff describing OMHA as "inadequately resourced for the task before it").) See also AHA, 2014 WL 7205335, at *9 ("OMHA has been saddled with a workload it cannot, at present, possibly manage."). Faced with insufficient resources, defendant has prioritized appeals filed by individual Medicare beneficiaries in order "to ensure their health and safety is protected." (Griswold Mem., DE # 11-4, at 1.)

The Secretary has only limited budget flexibility with which to address the inundation of appeals. Because OMHA is funded through its own appropriation, see Dep't of Health &

13

Human Servs. Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 363, 380, Congress must authorize the transfer of most funds into this appropriation, 31 U.S.C. § 1532 ("An amount available under law may be withdrawn from one appropriation account and credited to another or to a working fund only when authorized by law."). The Appropriations Act allows the Secretary only limited authority to transfer funds between HHS appropriations: "Not to exceed 1 percent of any discretionary funds . . . which are appropriated for the current fiscal year for HHS in this Act may be transferred between appropriations, but no such appropriation shall be increased by more than 3 percent by any such transfer . . . ." Pub. L. No. 113-76, 128 Stat. 382. As the AHA court stated, "Such a meager bump in funding would do little to stanch the tide of appeals." 2014 WL 7205335, at *8.

The court declines to intervene where, as here, OMHA's delayed adjudication of appeals is the result of a lack of resources. As the court in Barr Labs stated, this "is a problem for the political branches to work out." 930 F.2d at 75. And, indeed, the political process is at work here. Congress is well aware of the problems facing OMHA, (Griswold Test., DE # 11-3),[6] and OMHA has increased its funding request for fiscal year 2015, see Dep't of Health and Human Servs. Fiscal Year 2015 Justification of Estimates for Appropriations Committees, at 172. Under these circumstances, the court will defer to the executive and legislative branches which are better situated to prescribe a remedy for OMHA's delays.

Additionally, the court chooses to exercise judicial restraint where, as here, its involvement would disrupt defendant's allocation of limited resources to competing priorities. As noted above, in the face of insufficient resources, defendant has decided to prioritize appeals of individual Medicare beneficiaries. It has also chosen to temporarily suspend the assignment

---

[6] The court takes judicial notice of Griswold's testimony before the House Committee only to the extent that it indicates that such testimony was given.

of new requests for hearings. HHS is in a "unique—and authoritative—position" to determine how best to allocate its resources when confronted with competing agency priorities. Barr Labs, 930 F.2d at 76.

In exercising its discretion, the court recognizes HHS's comparative institutional advantage in crafting a solution to the delays in the adjudication of appeals. The Fourth Circuit Court of Appeals has noted that while agency expertise does not foreclose judicial review, the court "accommodate[s] agency expertise through judicial restraint and appropriate deference to agency decisions . . . ." Quinteros-Mendoza v. Holder, 556 F.3d 159, 163 n.4 (4th Cir. 2009). The court concludes that such restraint and deference is warranted in this case.

There are, undoubtedly, equitable considerations weighing in plaintiff's favor. To begin, defendant's delays at the ALJ stage go far beyond the timeframe envisioned by Congress. Further, plaintiff's pending appeals amount to $12.3 million dollars' worth of claims, which, as previously noted, "approximates one year's revenue for [plaintiff's IRF]." (Compl., DE # 1, ¶ 62.) Plaintiff argues that the uncertainty surrounding these funds places its IRF in a precarious financial situation. (DE # 12, at 6.) It contends that without these funds, "the IRF cannot afford to continue servicing its six-county area for much longer." (Id.) Plaintiff's IRF, located in Fayetteville, North Carolina, is the only such facility within the surrounding six-county area. (Compl., DE # 1, ¶ 17.) OMHA's delays put at risk the health and welfare of the community which depends on the facility to provide rehabilitative services. However, as the AHA court recognized, "Nearly everything HHS does affects human health and welfare . . . ." 2014 WL 7205335, at *6. Thus, if the court ordered defendant to more expeditiously resolve plaintiff's appeals, it would necessarily require defendant to allocate more resources to adjudicating plaintiff's appeals and to concomitantly decrease resources dedicated to promoting the health and

15

welfare of another group. As discussed above, HHS is in the best position to weigh the costs and benefits of its resource allocation.

The court recognizes the heavy financial burden that OMHA's delays impose on plaintiff. However, based on the above discussion, the court declines to intervene at this point, finding that the political branches are best-suited to alleviate OMHA's crippling delays.

## B.  Declaratory judgment action

Plaintiff asserts a cause of action pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, seeking "a declaration of its legal right to a hearing within 90 days of filing its appeals . . . and as to the wrongfulness of HHS' delays in docketing, reviewing and deciding such appeals." (Compl., DE # 1, ¶ 74.)  The DJA does not provide a right of action.  See First Nationwide Mortg. Corp. v. FISI Madison, LLC, 219 F. Supp. 2d 669, 672 n.1 (D. Md. 2002). "[It] is a procedural statute that creates no substantive rights."  Id.  A declaratory judgment action will be "barred to the same extent that the claim for substantive relief on which it is based would be barred."  Plimpton v. Cooper, 141 F. Supp. 2d 573, 576 (W.D.N.C. 2001) (internal quotation omitted).  Plaintiff argues that "[t]he mandamus suit provides the right of action as to which declaratory relief is alternatively requested."  (DE # 12, at 25 n.5.)  Because the court will dismiss plaintiff's underlying mandamus action, it must dismiss plaintiff's declaratory judgment action as well.

## IV.  CONCLUSION

Based on the foregoing, defendant's motion to dismiss, (DE # 11), is GRANTED, and the

16

Clerk is DIRECTED to close this case.

This 18 March 2015.

_____

W. Earl Britt

Senior U.S. District Judge